IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 4:15-CR-0083 |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| ALAN J. FASSETT, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINON</u>**

November 17, 2015

This case presents a challenging question: under what circumstances should

the Court strip a criminal defendant of representation by counsel of his choice.

Here, the balance of equities would tip too far astray from a fair trial if the

Defendant were able to proceed with his current, potentially conflicted, lead

counsel.  Accordingly, for the Court to ensure a fair trial for all parties, I must

disqualify Defendant's lead counsel, Arthur D. Agnellino, Esquire.

## I.  BACKGROUND

On May 5, 2015, Alan J. Fassett[1] was indicted, on grand jury

recommendation, on multiple charges of various financial crimes he allegedly

perpetrated against a ninety-two year old victim (now deceased)  known as "LG".

---

[1]Hereinafter "Fassett"

On September 22, 2015, a superseding indictment was filed.[2]  Fassett plead not guilty to all charges against him.

On October 6, 2015, the government filed a sealed Motion to Disqualify Fassett's retained, lead counsel, Arthur D. Agnellino, Esquire.[3]  In addition to Agnellino, Fassett has retained a second attorney, Joseph Joch, Esquire.[4]

The matter has been fully briefed and a hearing on the motion was held on November 3, 2015.  At the hearing, Joch presented as counsel, and Agnellino testified on his own behalf.

## II.  DISCUSSION

In August 2013, Fassett was asked to attend a meeting with a representative from the Bradford County Area Agency on Aging.[5]  Fassett's legal counsel, Arthur D. Agnellino, Esquire[6] accompanied Fassett to the meeting with the BCAAA representative, Stacey Ostrander[7].

At the November 3, 2015 hearing, the government represented to the Court

---

[2]ECF No. 39.

[3]ECF No. 49.

[4]Hereinafter "Joch"

[5]Hereinafter "BCAAA"

[6]Hereinafter "Agnellino"

[7]Neither party provided the spelling of her name to the Court, accordingly, this spelling represents the Court's educated guess.

that Fassett had made several incriminating statements at this meeting.

Specifically, Fassett allegedly admitted to spending the victim's money for his own

expenses and further allegedly admitted transferring her money into his own

accounts for his own benefit.

The reason for the motion, according to the government, is that Agnellino

disputes that Fassett made any incriminating statements because Agnellino has

firsthand knowledge of the discussion based on his presence at the BCAAA

meeting.  The government asserts that Agnellino, after his review of  Ostrander's

notes provided in discovery, spoke to government counsel and stated, something to

the effect of,  "That's not true, I was there."

Agnellino testified at the November 3, 2015 disqualification hearing that,

contrary to the assertions of the government, the only topic of discussion at the

August 2013 meeting with Ostrander was the fact that LG did not have the

financial resources to sustain her monthly expenses at Ashton House (the Athens,

Pennsylvania nursing home where she resided).  Agnellino further testified that

after the meeting, Fassett immediately transferred a large sum of money to LG's

account to provide for her expenses at Ashton.

The first basis for the government's motion that Agnellino should be

disqualified is  because Fassett would be better served if Agnellino could present

as a witness at trial to offer testimony to dispute Ostrander's recitation of the allegedly incriminating statements.[8]   The second basis for the motion is that without disqualification, Agnellino would serve as an "unsworn witness" for Fassett at trial.   An unsworn witness is "an attorney [who] may influence the litigation indirectly through questioning or in the course of making arguments as a lawyer, rather than directly through sworn testimony and being cross-examined as a witness."[9]   The Court will address these questions in turn.

## 1.  The Qualified Right to Counsel

The *Sixth Amendment* to the United States Constitution provides, in relevant part, "in all criminal prosecutions, the accused shall ...have the assistance of counsel for his defense."   Although counsel of ones choosing is important, it is not of such paramount importance than conflicts may be waived away.   "[No] such flat rule can be deduced from the Sixth Amendment presumption  in favor of counsel of choice."[10]   "The Sixth Amendment right to choose one's own counsel is

---

[8]Although seemingly less likely, an additional argument is that the government may call Agnellino as its witness to testify as to the allegedly incriminating statements by Fassett during the meeting at issue.

[9]Roxanne Malaspina, RESOLVING THE CONFLICT OF THE UNSWORN WITNESS: A FRAMEWORK FOR DISQUALIFYING HOUSE COUNSEL UNDER THE ADVOCATE-WITNESS RULE, 67 N.Y.U. L. Rev. 1073, 1075 (1992).

[10]*Wheat v. United States*, 486 U.S. 153, 160, 108 S. Ct. 1692, 1697-98, 100 L. Ed. 2d 140 (1988).  The Court comprehends that *Wheat* is a case dealing with joint representation (not an issue here), it is nonetheless the seminal high court case on conflict generally.

circumscribed in several important respects."[11]  "Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[12]  "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."[13]

"To be sure, this need to investigate potential conflicts arises in part from the legitimate wish of district courts that their judgments remain intact on appeal."[14] "Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly."[15]

---

[11]*Id.*

[12]*Id, see also Morris v. Slappy, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617–1618, 75 L.Ed.2d 610 (1983); Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).*

[13]*Id.*

[14]*Wheat, supra.*

[15]*Id.*

5

"The difficulty here is that the Court is confronted with "the prospect of being "whip-sawed" by assertions of error no matter which way [I] rule."[16] "[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."[17]

### 2.  Advocate as witness

The primary, and most compelling, argument for disqualification is that Agnellino could be a witness at trial.  The government asserts that Ostrander will testify that Fassett made incriminating statements to her.  The defense intends to dispute Ostrander's anticipated trial testimony. The defense asserts that Agnellino need not be disqualified, because Fassett intends to testify on his own behalf.

There are two types of conflicts, actual and potential.  The government sets forth arguments that Agnellino is both actually and potentially conflicted. The government first asserts that Agnellino has an actual conflict because his legal advice is for Fassett to waive his *Fifth Amendment* privilege at trial and testify.

---

[16]*Id.*

[17]*Id.*

Naturally, there is a concern that this may be made in Agnellino's best interest, so as to avoid the need to have him testify at trial, rather than in his client, Fassett's best interests.

The government additionally asserts that Agnellino is potentially conflicted for two reasons.  First, the government may call Agnellino as a witness at trial.  Second, that Fassett would be better served if Agnellino is disqualified as Agnellino could provide corroborating testimony as to Fassett's recitation of the August 2013 BCAAA meeting.

Although not couched in the following terms, the defense contends that disqualification of Agnellino would visit a "substantial hardship" on Fassett, as Agnellino has been his counsel for an extended period of time.  Further, Agnellino is currently working for Fassett without payment as Fassett's assets have been frozen by the government.

Not unexpectedly, Pennsylvania's Rules of Professional Conduct govern the issue of advocate as witness.  The Rules state that

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Pa. R. Prof. Conduct 3.7.

Additionally, the comments to Rule 3.7 state that "[1]Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client."[18]  And "[2]The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof."[19]

The comments go on to state "[3]To protect the tribunal, paragraph (a) prohibits a lawyer from simultaneously serving as advocate and necessary witness except in those circumstances specified in paragraphs (a)(1) through (a)(3). Paragraph (a)(1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical...."[20]  "[4]Apart from these two

---

[18]Pa. R. Prof. Conduct 3.7. Cmt. 1.

[19] Pa. R. Prof. Conduct 3.7. Cmt. 2.

[20]  Pa. R. Prof. Conduct 3.7. Cmt. 3.

exceptions, paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. Interestingly, the conflict of interest principles stated in Rules 1.7, 1.9 and 1.10 have no application to this aspect of the problem."[21]

Finally, comment 6 states, in relevant part, "The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved. If there is a conflict of interest, the lawyer must secure the client's informed consent. In some cases, the lawyer will be precluded from seeking the client's consent."[22]

---

[21]Pa. R. Prof. Conduct 3.7 Cmt. 4.

[22]Pa. R. Prof. Conduct 3.7 Cmt. 6.

In a case from the Southern District of Ohio, a state with a rule of professional conduct that is identical in all substantive respects to the Pennsylvania rule noted here, the court was presented with a motion to disqualify based on the same two possible scenarios, namely, that counsel is a potential witness at trial or counsel may act as an unsworn witness.  In *United States v. Matsa*,[23] the court disqualified counsel of Matsa's choice by explaining that "[a]lthough courts are to apply a presumption in favor of a defendant's preferred counsel, such a presumption may be overcome because such a choice must be balanced with the court's integrity of the proceedings and the public's interest in the proper administration of justice."[24]

In finding that there was no substantial hardship to the defendant by disqualifying counsel, the *Matsa* court stated "[r]egarding his contention that substitute counsel would lack the insights and information that [current counsel] has about potential Government witnesses, nothing precludes [counsel] from conveying his knowledge to Mr. Matsa's new counsel or otherwise assisting new counsel in the handling of this case."[25] "[T]he Court acknowledges that a change in

---

[23]2010 WL 4117548,  (S.D. Ohio Oct. 19, 2010) *aff'd*, 540 F. App'x 520 (6th Cir. 2013)

[24]*Matsa,* 2010 WL 4117548 at *2, *citing United States v. Mays*, 69 F.3d 116, 121 (6th Cir.1995) and *United States v. Swafford,* 512 F.3d 833, 839 (2008) *(quoting Wheat,* 486 U.S. at 163)) (internal quotations omitted).

[25]*Matsa*, 2010 WL 4117548, at *4.

counsel may be inconvenient, but such a change does not work a substantial hardship... substitute counsel would not be assuming Mr. Matsa's representation on the eve of trial."[26] The Court also found that Matsa would benefit from conflict-free counsel's advice as to the best defenses to raise.[27]

I am cognizant, however, that a motion to disqualify may be a tactical move by the government.  "Because of [the] risk of abuse [by prosecuors] the text...prohibits continued representation only when it is likely that the lawyer will be called as a "necessary" witness.[28]   In the "murky pre-trial context, the responsible course is to tread carefully."[29]  While it is far from certain that Agnellino is a necessary witness, the risk is too great to assume that he is not.  Joch asserted that Fassett intends to testify in his own defense at trial.  If that is the case, then it seems that Fassett is best served by the availability of Agnellino as a corroborating witness.

I have attempted to follow the directive of the United States Court of Appeals for the Third Circuit and therefore "conduct[ed] an evidentiary hearing or

---

[26]*Id.*

[27]*See id.*

[28]Roxanne Malaspina, RESOLVING THE CONFLICT OF THE UNSWORN WITNESS: A FRAMEWORK FOR DISQUALIFYING HOUSE COUNSEL UNDER THE ADVOCATE-WITNESS RULE, 67 N.Y.U. L. Rev. 1073, 1091 (1992) (examining the similar ABA advocate witness rule).

[29]*United States v. Perry*, 30 F. Supp. 3d 514, 539 (E.D. Va. 2014) (Davis, J.).

factual inquiry to determine whether disqualification is appropriate and inquire[d] into the nature of the conflict and the client's awareness of the conflict."[30]  I also "determine[d] whether there has been a waiver of the conflict, whether the waiver was effective or whether a waiver was possible."[31]  Finally, I engaged in a colloquy of Fassett at the November 3, 2015 hearing.  Fassett appeared to be making a knowing and voluntary waiver of the opportunity to have Agnellino as a witness in favor of keeping Agnellino on as defense counsel.  Be that as it may, the most prudent course of action would be to decline to accept the waiver.  As noted above, "[t]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."[32]

Moreover, Fassett should be availed of the advice of non-conflicted counsel to advise him whether waiving his *Fifth Amendment* right is in his best interest. "Counsel's function is to assist the defendant, and hence counsel owes the client a

---

[30]*Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 139 (3d Cir. 1984)

[31]*Id.*

[32]*Wheat*, 486 U.S. at 163.

duty of loyalty [and] a duty to avoid conflicts of interest."[33]  "[C]onflicting interests  nonetheless arise out of personal interests of counsel that were inconsistent, diverse or otherwise discordant with those of his client and which affected the exercise of his professional judgment on behalf of his client."[34]

The government has asserted that it would not object to court appointed counsel to assist Joch, who made arguments at hearing that the case required the ministrations of two attorneys.  This appears to be a suitable solution to Joch's concerns.  It also ameliorates the substantive hardship issue.  Perhaps most importantly, it would provide Fassett with an entirely non-conflicted attorney to advise him on waiving his *Fifth Amendment* right.

This motion has been disposed of well in advance of a yet-to-be-scheduled trial, so that a second chair would have adequate time to prepare.  I conclude that there will not be a substantial hardship to Fassett by disqualifying Agnellino.

3.  *The unsworn witness issue*

A second, albeit less compelling, reason for the disqualification motion is the unsworn witness problem.  This question is addressed in the seminal case of

---

[33]*Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984)

[34]*Zepp*, 748 F.2d at 135.  (internal citations and quotations omitted).

*United State v. Locascio*[35] decided by the United States Court of Appeals for the Second Circuit.  Although the principal named defendant may be unfamiliar to a reader of this opinion, the second defendant, the one at the heart of the unsworn witness issue is recognizable, namely John Gotti.[36]

Critics of *Losascio* assert that the government's disqualification motion was merely a trial tactic, as Gotti's counsel,  Bruce Cutler,[37] had obtained three prior acquittals for Gotti.  Nothwithstanding this criticism, the court was the first to devise a disqualification test that balances the two, at times opposing, *Sixth Amendment* interests: that of the defendant to counsel of his choosing and that of the Court and the judicial system to conduct a fair and impartial trial.

As *Locascio* details, Gotti was indicted on RICO[38] charges after the government installed a wire in an apartment two stories above a social club that the Gambino crime family members frequented.  The government moved to disqualify Cutler prior to trial, and the district court granted the motion.  The Second Circuit affirmed.  There were several reasons for the disqualification, but Second Circuit found that the strongest basis for disqualification was the possibility that Cutler

---

[35]6 F.3d 924 (2nd Cir. 1993).

[36]Hereinafter "Gotti"

[37]Hereinafter "Cutler"

[38]The Racketeer Influenced Corrupt Organizations Act.

14

would act as an unsworn witness for Gotti, as he was present for many of the Gambino family's conversations about criminal activity, as evidenced by the surveillance tapes.

The *Losascio* court stated that even if an attorney is not called as a witness, "he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question."[39] "For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client."[40] "Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination."[41] "This is different from the situation in *Wheat*, since the conflict in *Wheat*—multiple representation—was a conflict inuring to the detriment of the accused."[42] "In such a case, waiver by the accused of the conflict can  conceivably alleviate the constitutional defect, so long as the representation by counsel does not

---

[39] *Locascio*, 6 F.3d at 933.

[40] *Id.*

[41] *Id.*

[42] *Id.*

seriously compromise the integrity of the judicial process."[43] "When an attorney is an unsworn witness, however, the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired."[44] "Waiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced."[45]

"The government was legitimately concerned that, when Cutler argued before the jury for a particular interpretation of the tapes, his interpretation would be given added credibility due to his presence in the room when the statements were made."[46] "This would have given Gotti an unfair advantage, since Cutler would not have had to take an oath in presenting his interpretation, but could merely frame it in the form of legal argument."[47] Gotti had argued that "that the district court erred in disqualifying Cutler where the government had no intention of calling Cutler."[48] The Second Circuit found that the "contention [wa]s meritless, since the district court explicitly and correctly noted that "whether the government

---

[43]*Id.*

[44]*Id.*

[45]*Id.*

[46]*Id.* at 934.

[47]*Id.*

[48]*Id.*

16

will or will not call ... Cutler ... has no significance for this motion."" [49] "[T]he government's case should not be unfairly impaired so that an accused can continue with conflicted counsel." [50]

In the matter at hand, the defense contends that the unsworn witness problem is moot, because Joch, not Agnellino,  plans to cross-examine Ostrander. Additionally, the defense plans to file a *motion in limine* to exclude any reference to Agnellino as the attorney who accompanied Fassett to the BCAAA meeting with Ostrander.

That said, it seems that the unsworn witness problem could arise in areas other than cross-examination.  Clearly any statements Agnellino may make in opening and closing arguments may be infused with his personal knowledge of Fassett's allegedly incriminating statements to Ostrander.  Moreover, although Agnellino asserted at the hearing that he barely remembered the August 2013 meeting, his assertions carry doubt.  On direct examination he was able to recollect that he had to wait for thirty minutes to meet with Ostrander, that the meeting lasted only ten minutes, who was present in the room, Ms. Ostrander's full name, the purpose of the meeting, what was discussed at the meeting, and what Fassett

---

[49] *Id.*

[50] *Id.*

may or may not have said.  On cross-examination, the government was able to refresh Agnellino's recollection that there were also discussions between Fassett and Ostrander as to a life insurance bill and an electric bill owed by LG.

It is the Court's respectful observation that Agnellino's demeanor  on cross-examination was far from neutral; he seemed, in fact, resistant to the questioning. Agnellino's demeanor at the disqualification hearing belies his contention that the meeting was of such minor importance that he barely remembered it.  Furthermore, the BCAA meeting may prove at trial to be critical to the prosecution and defense of this case and what was admitted and denied by Fassett.

It is my conclusion that if Agnellino's representation of Fassett were to continue, even if Joch undertook the cross-examination of Ms. Ostrander, Agnellino's personal knowledge of the meeting and Fassett's allegedly incriminating statements would certainly be imparted to the jury during other parts of the trial.  This may then create the difficulty of the unsworn witness at trial with all of its attendant problems and impact on the Court's impartial fact-finding process.

Finally, Joch argued that the attorney-client privilege would protect the conversation.  This argument is unpersuasive.   "For a communication between a

client and his attorney to be privileged it must be confidential."[51]  As Ostrander was present in the room with Agnellino and Fassett, no attorney-client privilege attaches.

## III.  Conclusion.

"Although disqualification is a drastic measure, the district court is in the best position to evaluate what is needed to ensure a fair trial."[52]  I conclude that considerations of judicial administration in this matter are sufficient to overcome the presumption in favor of retained counsel of Fassett's choice.  The Court finds that should Agnellino continue as counsel for Fassett, it is likely that the balance of equities would fall too far astray from a fair trial.  Accordingly, the

---

[51]*United States v. Smith*, 33 M.J. 527, 531 (A.F.C.M.R. 1991) aff'd, 35 M.J. 138 (C.M.A. 1992).

[52]*Locascio*, 6 F.3d at 935.

Government's Motion to Disqualify Arthur D. Agnellino, Esquire will be granted.

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge